IVER A. BODEN *et al.* Appellees, *vs.* RUTH SWANSON, Appellant.

*Opinion filed February 18, 1926.*

REGISTRATION OF TITLE—*what does not show enforceable contract for conveyance.* The statement by the owner to a real estate firm of his lowest cash price for his lots, and their reply that they "have a buyer for them," do not constitute a contract enforceable by the buyer, where further correspondence between the parties indicates clearly that certain essential items of the transaction were never fully agreed upon.

APPEAL from the Circuit Court of Cook county; the Hon. FRANCIS S. WILSON, Judge, presiding.

MACK, LOWES & LEOPOLD, for appellant.

CHARLES D. QUIRK, for appellees.

Mr. JUSTICE FARMER delivered the opinion of the court:

This is an application filed in the circuit court of Cook county on February 13, 1925, by Iver A. Boden and Harry T. Boden, of Rockford, Illinois, to have registered in them, as tenants in common, the title in fee to two unimproved and unoccupied lots in Rogers Park Manor, Cook county, Illinois. The application alleged that Ruth Swanson, who is appellant here, claims an interest in the property under a cloud created by her recorded notice of March 9, 1923,

which claim is void and should be set aside; that H. P. Haanel claims an interest in the property by virtue of an agreement between Iver A. Boden and Haanel, dated February 16, 1924, for the sale of said property, which sale agreement, and his notice of claim that such was a valid contract, were properly recorded in the recorder's office of Cook county. Defendant, Ruth Swanson, entered her appearance, and thereafter, by leave of court, filed an amended answer and cross-application, wherein she admits claiming an interest in the property and the recording of a notice thereof, and states that on February 23, 1923, Iver A. and Harry T. Boden entered into a contract with her whereby they agreed to sell and convey to her, and she agreed to purchase, the property described in the application for the sum of $1200; that she has always been ready, willing and able to purchase the property upon the terms agreed upon and has repeatedly requested applicants to perform their part of the contract, but they have refused to do so. The answer further avers that Haanel has no interest in the property, and denies that the contract between Boden and Haanel is a valid contract for the sale of the real estate; that Haanel had notice of the existence of defendant's contract prior to his alleged contract of February 16, 1924, and that Boden could not lawfully enter into a contract with Haanel for the reason that Boden had previously contracted to sell the property to defendant, and that her contract was then, and still is, in force and effect. Further answering, defendant denies that applicants are entitled to the relief prayed in the application, and prays that the court decree that she has a valid and binding contract for the purchase of the property and order registration thereof in her name on the payment by her of the purchase price of $1200, as originally agreed between the parties. The cause was referred to an examiner of titles to take the proof and make report thereon. The examiner made his report, finding that applicants are the owners, as tenants in common, of the

fee simple of the land described in the application, each owning an undivided one-half interest; that the agreement between Boden and Haanel for the sale of the property is a valid interest in said land; that no contract in writing was signed for the sale and conveyance of the premises to Ruth Swanson; that the letters and unsigned proposed contract did not show any final meeting of the minds of the parties. He recommended that the claim of Ruth Swanson be held by the court to be invalid, be canceled as a cloud upon the title of applicants, and that the cross-application be dismissed for want of equity. The report further recommended that a decree be entered in pursuance of the prayer of applicants and that the title be registered in their names. Objections were filed to the examiner's report, which were overruled and by order of court stood as exceptions to the report. The court overruled the exceptions and entered a decree in June, 1925, in accordance with the findings and recommendations of the examiner. From that decree Ruth Swanson has prosecuted this appeal.

The errors relied upon by appellant are, that the court erred in not finding that the cross-applicant, appellant here, had a valid and enforcible contract for the conveyance of the lands in question, and that the court erred in finding that the agreement between Iver A. Boden and H. P. Haanel for the sale of the property was a lien against and an interest in the premises.

From the proof offered before the examiner it appears that Iver A. Boden and his brother, Harry, who were residents of Rockford, each owned an undivided half interest in the two vacant and unoccupied lots here involved, and Iver, for himself and his brother, was negotiating for the sale of the property. Written assent to the registration, as requested by applicants, was executed by Haanel and offered in evidence. The claim of appellant and cross-applicant, Ruth Swanson, is based on correspondence during December, 1922, and the early months of 1923, between

Iver A. Boden and Wm. H. Pusheck & Co., a real estate firm located in Chicago. The important correspondence relied on was carried on by M. B. Dean, who was at that time a salesman for and to some extent interested in the company. Ruth Swanson, during the period of the correspondence and at the time of the hearing before the examiner, in April, 1925, was an employee of Pusheck & Co. The first correspondence appearing was dated December 29, 1922, by Boden to Pusheck & Co., stating the lots were under option till January 1, 1923. Dean, for Pusheck & Co., on February 16, 1923, wrote Boden acknowledging receipt of the latter's letter of December 29 and offering $1100 cash for the lots. On February 21, 1923, Boden wrote the real estate company in answer to its previous letter, and said: "My best cash price for these lots are $1200 net. Buyer to assume all taxes and assessments levied after the year 1922." The company, by Dean, on February 23, 1923, answered Boden's last letter, and said: "We have a buyer for them as per your letter, $1200 net. Buyer to assume all taxes and assessments levied after the year 1922. This is a cash sale." The next day, February 24, Boden wrote Pusheck & Co. as follows: "I am returning contract on account that I will have to assume all special assessments which are now pending or have passed, which at present I am not able to state. I am willing to pay the 1922 taxes, but buyer to assume special assessments, and I to bring abstract down to date, showing clear title. This sale was for $1200 cash, net, and if buyer is willing to assume the special assessments I will make the sale. I have several offers to this effect, but am willing to hold this offer open for a few days and give you the first chance. * * * Having gone this far with the deal I will assume the taxes for 1922. This sale is for $1200 cash, net, buyer assuming all special assessments. Trusting this will set us clear," etc. Evidently some kind of a written contract was submitted by Pusheck & Co. to Boden, as he states in his letter just recited that

he is returning the contract and states his reasons therefor. However, this contract, if one was submitted, does not appear in the abstract nor is it mentioned or explained in the briefs. On February 26 Dean, for the company, acknowledged Boden's letter of the 24th, and states, "You misunderstood the contract." After reciting what special assessments were to be paid by the buyer, the letter closes with this language: "Hoping this will explain it satisfactorily to you." Thereafter Boden asked an attorney of Rockford to write Pusheck & Co. to see if they couldn't get together on the deal, and on March 3 the attorney wrote to the company. He referred to Pusheck & Co.'s last letter to Boden of February 26, and said: "I am at a loss to understand why a meeting of minds cannot be. effected. Mr. Boden's terms are $1200 net to him. The buyer to pay your real estate broker's fees and all special assessments levied against said property. The 1922 special assessments have not been paid, and if your client wishes this lot, it is up to Ruth Swanson to pay the same. If you care to accept these terms, kindly change contract prepared by you and enclosed herewith. Unless we hear from you within ten days the offer will be rescinded." It will be noted that a contract is again mentioned in the attorney's letter to which we find no reference in the abstract or briefs. Possibly it is the same contract referred to as being returned in Boden's letter of February 24, 1923, to Pusheck & Co. On March 5 Dean, for the real estate firm, wrote the attorney in reply to the latter's letter, and stated that Ruth Swanson had accepted the proposition of Boden, and "we have written a new contract whereby she pays all unpaid special assessments due after the year 1921, as per your instructions. Hoping the contract meets with your approval," etc. The writer adds a postscript, as follows: "If there is any alteration you wish to make on the contract you may insert the same and have Mr. Boden sign the contract and mail it to us, and we will let you know at once if it is acceptable to the purchaser."

The contract referred to in the letter of Pusheck & Co. to the attorney is dated March 5, 1923, and as it appears in the abstract and record shows it was unexecuted. It provided for the purchase of the lots by Ruth Swanson from Iver A. Boden for $1200; that $50 earnest money had been paid to Pusheck & Co., the balance to be paid at their office on delivery of a warranty deed conveying a merchantable title; that purchaser was to pay unpaid special assessments after 1921, any commission to Pusheck & Co., and also to assume 1922 taxes. The latter clause, "purchaser assumes 1922 taxes," it appears from the proof, was later written in the contract about March 9 by Dean, at which time Boden went to Pusheck's office in Chicago to see Dean about the deal. On that occasion there is some conflict as to what happened between Dean and Boden. The latter testified he asked for the $50 deposit Ruth Swanson had paid, and Dean couldn't produce it or show any evidence of its payment; that he (Boden) was willing to go through with the deal and asked for a $300 deposit, which was refused. Boden testified he said, "If this is the way you do business I cannot do business with you fellows," and thereafter left Pusheck's office. Dean denied Boden asked for any deposit and said Boden wanted more money, and then he (Dean) inserted in the contract, "Purchaser assumes 1922 taxes," but Boden still refused to sign the contract. It was on March 23 that Pusheck notified Boden by letter that the prospective purchaser to whom the property was sold had placed an affidavit on record concerning the transaction and expected the agreement to be performed or reimbursement for loss sustained by her and the real estate firm.

Appellant contends the correspondence discloses a complete contract and that she purchased the property for $1200 cash, net, from Boden, as stated in his letters. After a careful examination of the correspondence we are unable to agree with appellant's view. At no time was there an unconditional and positive acceptance of any offer made by

Boden nor was there a meeting of the minds of the parties. The letter of February 23 by Pusheck & Co. to Boden, stating, "We have a buyer for them," is clearly not an unqualified acceptance sufficient to warrant holding the sale was then completed. The entire correspondence shows the parties had not fully agreed, and this situation was recognized by Dean, of Pusheck & Co., when he wrote Boden on February 26, "You misunderstood the contract," and closed the same letter with "hoping this will explain it satisfactorily to you." Again, Dean says in his letter to Boden's attorney on March 5: "We have written a new contract. * * * Hoping the contract meets with your approval. * * * If there is any alteration you wish, * * * insert the same and have Mr. Boden sign the contract and mail it to us, and we will let you know at once if it is acceptable to the purchaser." If the terms of the sale were definitely agreed upon and the minds of the parties fully satisfied, why do the expressions referred to appear in the correspondence, and why was a new contract submitted, supposedly covering the points or terms involved which were not previously clear? Ruth Swanson testified she paid $50 earnest money to Dean, who suggested to her that she buy the property as an investment, and that she signed a written contract for the purchase and sale. If such a contract was ever signed we are unable to find it in the record. The unexecuted contract form dated March 5 appearing in the abstract provides how and where the money was to be paid, and it is certain this portion of the written agreement submitted was never mentioned or discussed in any correspondence.

We are of opinion the finding of the examiner as shown by the proof warranted the recommendations made by him to the court and that the decree was properly entered, and it is therefore affirmed.        *Decree affirmed.*